FILED
99 SEP 28 PM 3:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

AT&T, )
    )
        Plaintiff, )
    )
v. ) CIVIL ACTION NO. 98- JEO-1290-E
    )
JIM HARPER and )
DAVID HUTCHESON, )
    )
        Defendants. )

ENTERED
SEP 2 8 1999

## MEMORANDUM OPINION

Before the court is the "Motion for Summary Judgment" (doc. 14)[1] filed by defendant David Hutcheson ("Hutcheson") on the various claims advanced by plaintiff AT&T ("AT&T") concerning damage to one of its cables as a consequence of excavation work done on Hutcheson's property by defendant Jim Harper ("Harper"). Upon consideration of the record, the submissions of the parties, and the relevant law, the undersigned is of the opinion that the Motion for Summary Judgment is due to be granted in part and denied in part.

### I. FACTUAL BACKGROUND

Hutcheson and his wife own approximately eighteen (18) acres of land in Muscadine, Alabama. AT&T has an easement that runs across a portion of Hutcheson's property. (Hutcheson Affidavit, p. 1).[2] Hutcheson was aware of the easement. (*Id.*). He and his wife were interested in building a lake on the property. Sometime before May 22, 1996, Hutcheson learned that Harper had

---

[1] References herein to "doc.___" are to the document numbers assigned by the Clerk of the Court and located in the lower right-hand portion of the document.

[2] Hutcheson's affidavit is located at document 27.

35

the ability to construct a lake and dam. Hutcheson and his wife decided to have Harper build a lake and dam for them. (*Id.*). Harper estimated the cost for the project to be between four and five thousand dollars.

According to Harper, Hutcheson showed him where he believed the AT&T easement was located and where he wanted Harper to build the lake, the dam, and a road from the house to the lake. (Harper Affidavit, pp. 2, 4).[3] Hutcheson disputes telling Harper that he wanted a road built from his house to the lake and where Harper asserts that Hutcheson showed him that the easement was located.

Construction commenced on the Hutcheson's property. After a couple of weeks, on May 22, 1996, Harper was excavating on the property in an area intended for the road. While he was removing tree stumps, he damaged AT&T's underground cable. (*Id.*, p. 4). Hutcheson states that he learned that Harper was excavating in the easement area when he returned home after he was called at work on May 22 and he observed a large number of AT&T trucks at his house. (Hutcheson Affidavit, p. 2).

After the cable was damaged, AT&T hired a contractor to repair it. Peter Keating, an associate manager of claims for AT&T, estimates the company incurred approximately $65,406.61 in expenses to repair the cable. (Keating Deposition, pp. 40-41; Defendants' Exhibit 19)[4]. AT&T also seeks an additional $61,399.29 in damages premised on the "loss of use of their facility between Birmingham and Atlanta." (Keating Deposition, p. 31).

---

[3] Harper's affidavit is located at document 20, exhibit A.

[4] Keating's depostion is located in document 27.

2

AT&T filed its complaint in May 1998, alleging, in count one, alternative claims of intentional, wanton, reckless, and negligent conduct against Hutcheson, Harper, and other unnamed individuals. The claims were premised on the defendants' purported failure to act in a prudent and careful manner as specified in *Alabama Code* §§ 37-15-1, *et seq.* (1998 Cum. Supp.). (Doc. 1, ¶¶ 10, 12, 14). Count two alleges a trespass claim against both defendants. Count three alleges that the defendants invaded and interfered with AT&T's easement. Count four alleges that the defendants were negligent in that they failed to comply with the provisions in the Alabama Code concerning excavation and demolition. *See Alabama Code* §§ 37-15-1, *et seq.* (1998 Cum. Supp.).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-

3

23; *see* Fed. R. Civ. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts is the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## III. DISCUSSION

Hutcheson's motion for summary judgment requests that the court dismiss all the claims against him because he is not responsible for the actions of Harper. Specifically, Hutcheson claims that Harper was working in an area other than that Hutcheson directed him. Hutcheson further claims that he is not responsible for Harper's actions because he was acting as an independent contractor. He also asserts that he is entitled to summary judgment on AT&T's claim for damages premised on a loss of use of the cable between Birmingham and Atlanta since these damages are speculative or mere conjecture.

### A. Liability

#### 1. Hutcheson's Assertion That He Did Not Direct Harper to Work in Proximity to AT&T's Easement

There is no dispute that Harper unearthed AT&T's cable while working on Hutcheson's property. Hutcheson claims, however, that he is not legally responsible for Harper's actions due to the fact that he had directed Harper to build the lake and dam approximately fifty (50) yards from AT&T's easement.

The Alabama legislature in 1994 passed legislation intended "to safeguard against injury and loss of life due to excavation or demolition and to protect underground facilities from costly damage and the interruption of utility or other services to the general public." *Alabama Code* § 37-15-1 (1998 Cum. Supp.). The legislation sets forth the procedures to be followed before commencing excavation work in an area involving a private easement. *See Alabama Code* §§ 37-15-3, 4 & 6 (1998 Cum. Supp.).

Hutcheson asserts that this legislation does not apply to him as he had no reason to believe that the activities were in close proximity to AT&T's easement. (Doc. 27, p. 7). When his motion and brief were filed, there was no evidence other than Hutcheson's affidavit as to what directions were provided Harper. Hutcheson stated that he directed Harper to build the lake and dam in an area that was approximately fifty (50) yards from AT&T's easement. AT&T then submitted an affidavit from Harper. In Harper's affidavit, he states that when he unearthed AT&T's cable, he was removing a stump from the area Hutcheson directed him. In contravention of Hutcheson's affidavit, he also states that he was preparing the area to build a road as directed by Hutcheson. Because there is a factual dispute over a material issue, that is, what directions Hutcheson gave Harper concerning

6

what work was to be undertaken and where it was to be done, summary judgment is precluded. Hutcheson's claim that he is due summary judgment because he did not direct Harper to work in the contested area is due to be denied.

### 2. Harper Was Not the Agent or Employee of Hutcheson

Hutcheson next asserts that he is entitled to summary judgment because AT&T has failed to demonstrate that Harper was his agent or employee. AT&T asserts that the affidavit of Harper does establish that he was Hutcheson's agent.

The parties do not clash over the applicable law. They agree that in order to determine whether an agency relationship exists, the pertinent inquiry is whether Hutcheson retained the right to direct or control the manner in which Harper performed his activities. *Ex parte Paulk*, 722 So. 2d 171, 173-74 (Ala. 1998); *Griffin v. Adams*, 674 So. 2d 556, 558 (Ala. Civ. App. 1995). As stated in *Paulk*:

> Whether one is the agent of another is ordinarily a question of fact to be decided by the jury. *Daugherty v. M-Earth of Alabama, Inc.*, 485 So. 2d 1145 (Ala. 1986). As was stated in *Cordes v. Wooten*, 476 So. 2d 89 (Ala. 1985): "It is elementary that the test of agency is the right of control, whether exercised or not, and that is a question for the trier of fact if the evidence is in dispute." For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. *Solmica of the Gulf Coast, Inc. v. Braggs*, 285 Ala. 396, 232 So. 2d 638 (1970). An agency relationship is not created when the employer merely retains the right to supervise or inspect the work of an independent contractor as it progresses for the purpose of determining whether it is completed according to plans and specifications and retains the right to stop work that is not properly done. *Weeks v. Alabama Elec. Co-op., Inc.*, 419 So. 2d 1381 (Ala. 1982).

*Paulk*, 722 So. 2d at 173-74; *Brown v. Commercial Dispatch Pub. Co.*, 504 So. 2d 245, 246 (Ala. 1987). Additionally, as a general rule, "a premises owner is not liable for the torts of an independent contractor." *Thompson v. City of Bayou La Batre*, 399 So. 292, 294 (Ala. 1981), *citing State Farm*

*Mutual Automobile Insurance Co. v. Dodd*, 276 Ala. 410, 162 So. 2d 621 (1964). The considerations in determining whether a party has retained a right of control include: (1) direct evidence which demonstrates a right or exercise of control, (2) the method by which the individual receives payment for his services, (3) whether equipment is furnished or not, and (4) whether the individual has the right to terminate. *Turnipseed v. McCafferty*, 521 So. 2d 31, 33 (Ala. Civ. App. 1992).

The parties do disagree over the application of the present facts to the law. The parties have presented probative evidence on the issue. As this court is required to view the evidence in favor of the nonmoving party without making credibility choices, the court finds for the purpose of this analysis (1) that Hutcheson told Harper he wanted a road built from his home to the opposite side of the proposed lake; (2) that Hutcheson told Harper that he wanted to be able to drive his car on the road and over the dam; (3) that Hutcheson told Harper to clear brush, shrubs and stumps for the lake and the road; (4) that Hutcheson limited the hours Harper could work after he cleared the brush, shrubs and stumps and told Harper when Harper could return; (5) that Hutcheson told Harper where to build the lake, the dam, and the road, including the height for the water line of the lake, the width and position of the dam,[5] and that red clay from Hutcheson's property was to be used for the dam, if it was necessary; (6) that Harper was paid on an hourly basis, usually for the work done during a particular week; and, (7) that a second person, Hugh Dorsey McMichael, also worked on the job at Harper's request and was paid by Hutcheson based on the number of hours worked.

No one fact is determinative of this issue. Accordingly, the court will evaluate all the facts with regard to the considerations enumerated in *Turnipseed*. Concerning the first consideration,

---

[5] The record also reveals that during the building process, Hutcheson had Harper change the position of the dam. (Harper affidavit, p. 4).

8

there is no direct evidence of a right of control on Hutcheson's part. There is no evidence that the parties entered into any written agreement or detailed understanding. There is no evidence that Hutcheson specifically reserved the right to control the manner in which Harper performed his work. The evidence does show that Hutcheson directed certain of Harper's actions. For instance, according to Harper, Hutcheson first asked him to clear the brush, shrubs, and stumps. (Harper Affidavit, p. 1). He then asked him to clear the dirt for the lake. (*Id.*). He then "instructed" Harper to begin digging the "core [of the lake] and building the dam." (*Id.*). He told Harper "how high he (Hutcheson) wanted the water line of the lake . . . which determined the height of the dam." (*Id.*, p. 4). He told Harper he wanted red clay used for the dam and, if it was necessary, to remove the clay from other areas on Hutcheson's property. (*Id.*). He also "instructed" Harper during the building process to change the position of the dam. (*Id.*, p. 5). In addition, he told Harper to clear the area for the road. AT&T asserts that these facts demonstrate the exercise of control over the process beyond that associated with a situation involving an independent contractor. The court disagrees. Accepting these facts as this court must at this juncture, they do not sufficiently evidence that Harper was anything more than an independent contractor. These facts do not evidence an employer-employee relationship or other relationship to warrant the application of vicarious liability.

Concerning the second consideration, the evidence shows that Harper was paid for each hour worked, with an initial estimate that the job would cost $4,000 to $5,000. Additionally, McMichael was paid on an hourly basis by Hutcheson. This evidence again tends to demonstrate that Harper was an independent contractor.

Concerning the third consideration, the evidence shows that Harper was to supply the necessary equipment other than the red clay, if it was needed. This evidence once again tends to

demonstrate that Harper was an independent contractor.

Concerning the last consideration, there is no evidence regarding under what conditions Hutcheson retained the right to terminate Harper. Therefore, this adds little to the court's review.

Under the applicable standard, the evidence when considered in totality is not adequate to overcome Hutcheson's motion for summary judgment. Harper's affidavit is insufficient to demonstrate the necessary control by Hutcheson of the means, method, and manner with which Harper conducted his activities to support a claim that Hutcheson is vicariously liable for Harper's actions. Summary judgment is due to be granted to the extent that AT&T's claim against Hutcheson is premised on any theory of vicarious liability.

In reaching this determination, the court has reviewed *Thomas v. Pepper Southern Construction, Inc.*, 585 So. 2d 882 (Ala. 1991), *Pugh v. Butler Telephone Company, Inc.*, 512 So. 2d 1317 (Ala. 1987), *Pate v. U. S. Steel Corp.*, 393 So. 2d 992 (Ala. 1981), which were cited by Hutcheson, and other pertinent cases. Although they were instructive on the issue, they are factually distinguishable. For instance, in *Thomas*, there was no evidence that the defendant controlled the activities of the contractor. The court found that the attendance of the contractor's employees at safety meetings of the defendant was not sufficient to demonstrate that the other defendant was merely an independent contractor. 585 So. 2d at 884-85. In *Pugh*, there was no evidence that the defendant exercised any right of control over the actions of the other defendant. 512 So. 2d at 1318-19. Finally, in *Pate*, there was no evidence of control of the particular activity which led to the injuries of the plaintiffs to hold the defendant liable for the actions of the contractor. 393 So. 2d at 994-95.

### B. Damages for the "Loss of Use" of the Cable

Hutcheson also claims that he is due summary judgment on AT&T's claim for damages totaling $61,399.29 for the loss of use of the cable. He asserts that such damages would be based on speculation and conjecture. This argument is based upon a portion of the Keating deposition wherein he states that he cannot prove the amount of revenue lost as a result of the damage to the cable.

Hutcheson is correct that an award of damages cannot be based on speculation or conjecture; but this does not preclude AT&T from seeking a recovery premised on the loss of use of the cable. *See Coffee County Commission v. Smith*, 480 So. 2d 1194, 1196 (Ala. 1985)(allowing a damages award that included the value of the lost use of the damaged farm equipment while it was being repaired); *Hannah v. Brown*, 400 So. 2d 410, 411 (Ala. Civ. App. 1981)(in determining the real loss when an automobile was damaged, the court allowed consideration of the reasonable value of use of the car during the period the owner is deprived of its use) *Hunt v. Ward*, 79 So. 2d 20, 26 (Ala. 1955)(the reasonable value of the use of a vehicle during the period of repair is an appropriate consideration in awarding damages).

The court finds that "the costs incurred in finding alternative methods to meet its [AT&T's] obligations to its customers" is an appropriate consideration for the jury. (Doc. 20, pp. 10-11). The court cannot find that AT&T is precluded from recovering damages premised on the loss of use of the cable.

### IV. CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is due to be denied in part and granted in part. An order consistent with the findings reflected in this Memorandum

11

Opinion will be entered contemporaneously herewith.

The Clerk of the Court is DIRECTED to serve a copy of this Memorandum Opinion upon counsel for the parties.

**DONE** this _28th_ day of September, 1999.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE